In the Matter of LONG ISLAND PINE BARRENS SOCIETY, INC., et al., Appellants, v PLANNING BOARD OF THE TOWN OF BROOKHAVEN et al., Respondents, and BRESKEL SHOPPING CENTER ASSOCIATES et al., Intervenors-Respondents.

Second Department, March 9, 1992

**APPEARANCES OF COUNSEL**

*Berle, Kass & Case (Michael B. Gerrard* and *Philip Weinberg* of counsel), for appellants.

*David P. Fishbein, Town Attorney (Denise F. Molia* of counsel), for Town of Brookhaven, respondent.

*Richard A. Ehlers* for Planning Board of the Town of Riverhead, respondent.

*Patricia C. Moore* for Town Board of the Town of Riverhead and another, respondents.

*Anthony B. Tohill, P. C.,* for Planning Board of the Town of Southampton and others, respondents.

*Robert J. Cimino, County Attorney (Charles P. Kelly, Jennifer B. Kohn* and *Ann S. Coates* of counsel), for Department of Health Services of the Suffolk County Health District, respondent.

*D'Amato, Forchelli, Libert, Schwartz, Mineo* and *Joseph F. Carlino (Armand P. D'Amato* and *Peter R. Mineo* of counsel), *Mars, Sloane & Conlon (Theodore D. Sklar* of counsel), *Certilman, Balin, Adler & Hyman* and *Leon D. Lazer (Zachary Murdock* of counsel), for Breskel Shopping Center Associates and others, intervenors-respondents. (One brief filed.)

*D'Amato, Forchelli, Libert, Schwartz, Mineo & Joseph F. Carlino (Armand P. D'Amato* and *Peter R. Mineo* of counsel), for R-Three Investors, intervenor-respondent.

*Mars, Sloane & Conlon (Theodore D. Sklar* of counsel), for Green Village Associates and others, intervenors-respondents.

*Esseks Hefter & Angel (William W. Esseks* and *John M. Wagner* of counsel), for Flanders Associates and others,' intervenors-respondents.

*Levine, Robinson & Algios, P. C. (Kenneth L. Robinson* of counsel), for Assembly Members of the New York State Legislative Commission on Water Resource Needs of Long Island, *amicus curiae.*

*Robert Abrams, Attorney-General (O. Peter Sherwood, James A. Sevinsky* and *Leslie Allan* of counsel), for State of New York, *amicus curiae.*

*Carolyn Zenk, Neufeld & O'Leary (David S. Neufeld* of counsel), and *Neal Lewis* for Group for South Fork Nassau/ Suffolk Neighborhood Network Affiliated Brookhaven Civic Organization, Inc., North Fork Environmental Counsel, *amicus curiae.* (One brief filed.)

*Howard I. Fox* and *Kirsten H. Engel* for Sierra Club, *amicus curiae.*

**OPINION OF THE COURT**

THOMPSON, J. P.

■ The principal question before us is whether the cumulative impact of proposed development in the environmentally fragile Pine Barrens area of Suffolk County must be assessed as part of the review process mandated by the New York State Environmental Quality Review Act (hereinafter SEQRA). We conclude that the appellants' amended verified petition alleges facts sufficient to state a cause of action requiring cumulative impact review under SEQRA, and accordingly, modify the order and judgment appealed from, by reinstating the first cause of action of the amended verified petition.

I.

The core area of the Pine Barrens, comprising some 100,000 acres known as the Central Pine Barrens, is a largely undeveloped, environmentally sensitive region extending throughout the Towns of Brookhaven, Southampton and Riverhead in central Suffolk County. The Pine Barrens region is an indispensable component of the Long Island aquifer system, the sole source of drinking water for over 2,600,000 inhabitants of Nassau and Suffolk Counties. The aquifer system, the largest and most important groundwater resource in New York State, consists of several porous, waterbearing formations, which slope and gradually deepen towards the south shore of Long Island. Precipitation which infiltrates the land surface in the Pine Barrens percolates downward to the water table through the aquifer's "Upper Glacial" layer and eventually reaches the aquifer's lower layers, where it "recharges" or replenishes the groundwater which the system continually discharges into the surrounding environment. This process, known as "deep flow recharge", constitutes the sole natural source of recharge waters replenishing the lower layers of the aquifer, and is essential to the maintenance of the system's high-quality groundwater reserves. Significantly, the "recharge" waters which emanate from the Central Pine Barrens radiate outwards toward all portions of the aquifer contributing to the dilution of contaminants which have permeated it.

The high soil permeability of the Central Pine Barrens, and

naturally low nutrient levels, together with the absence of extensive development, have made it the largest and highest quality "deep flow recharge" area on Long Island. Although the Pine Barrens soils are ideal for the storage and discharge of precipitation, they lack the capacity to filter out or degrade contaminants, which, as a consequence, enter into the groundwater. Once the groundwater becomes contaminated, it may take hundreds of years before the contaminants can be assimilated by the natural processes of the aquifer system. Such contaminants pose a serious and lasting threat to the groundwater reserves contained in the system.

In 1978, and pursuant to Federal Water Pollution Control Act § 208 (33 USC § 1288), the Long Island Regional Planning Board issued the "Long Island Comprehensive Waste Treatment Management Plan", the first public planning document to address the importance of preventing groundwater degradation within the Pine Barrens. The so-called "208 Plan" identified the key areas of "deep flow" recharge and established eight "hydrogeologic zones" on Long Island, so designated in light of their importance as groundwater supply sources. Hydrogeologic Zone III represents the area of "deep flow recharge" which generally coincides with the boundaries of the Central Pine Barrens. Although the plan notes that the nearby zones in Nassau and Suffolk Counties have sustained significant contamination, it identifies Zone III as possessing "[e]xceptionally high water quality and high potential yields". The "208 Plan" recommends, moreover, that sources of "deep flow" recharge such as the Central Pine Barrens, which contribute to the lower layers of the aquifer system, "should be subjected to the strictest management controls".

Various levels of government have recognized the critical ecological importance of Zone III and its impact on Long Island's drinking water (see, Safe Drinking Water Act, as amended, 42 USC § 300h-3; Long Island Groundwater Management Plan; Local Laws, 1984, No. 7 of Suffolk County; Local Laws, 1987, No. 24 of Suffolk County; Local Laws, 1987, No. 40 of Suffolk County). In 1978, the United States Environmental Protection Agency (hereinafter EPA) designated the Long Island aquifer system as one of the first four "sole source" aquifers in the country under the Safe Drinking Water Act (see, 42 USC § 300h-3 [e]). Notably, a "sole source" aquifer is "an aquifer which is the sole or principal drinking water source for the area and which, if contaminated, would create a significant hazard to public health" (42 USC § 300h-3 [e]). In

designating the Long Island aquifer system as a "sole source" aquifer, the EPA observed that "the aquifer system underlying Nassau and Suffolk Counties * * * is vulnerable to contamination through its recharge zone" and further stated that, "[s]ince contamination of a ground-water aquifer can be difficult or impossible to reverse, contamination of the aquifer system underlying Nassau and Suffolk Counties, New York, would pose a significant hazard to those people dependent on the aquifer system for drinking purposes" (AQUIFERS UNDERLYING NASSAU AND SUFFOLK COUNTIES, NEW YORK, 43 Fed Reg 26611, 26612).

In 1983, the Legislature enacted the so-called Long Island Landfill Law (ECL 27-0704), which prohibited the disposal of solid waste in landfills in Nassau and Suffolk Counties. Accompanying the statute are legislative findings which reveal the significance attributed by the Legislature to the preservation of the Long Island aquifer system. Specifically, the Legislature found that the "land burial and disposal of domestic, municipal and industrial solid waste poses a significant threat to the quality of groundwater and therefore the quality of drinking water in the counties of Nassau and Suffolk * * * since the potable water supply for the counties is derived from a sole source aquifer" (L 1983, ch 299 § 1; ECL 27-0704; see also, Governor's approval mem 1983 NY Legis Ann, at 135).

In 1987, and in response to mounting concerns regarding the integrity of the State's groundwater resources, the New York State Legislature enacted the Sole Source Aquifer Protection Law (ECL art 55) and designated the Central Pine Barrens as one of nine "special groundwater protection areas" in the State (ECL 55-0113 [1] [g]). The statute defines a "[s]pecial groundwater protection area" as a "recharge watershed area * * * which is particularly important for the maintenance of large volumes of high quality groundwater for long periods of time" (ECL 55-0107 [3]). ECL 55-0101, which enunciates the policy objectives underlying the adoption of ECL article 55, states, inter alia, that, "[i]t is declared to be the policy of this state to provide funds for the preparation and implementation of groundwater watershed protection plans in order to maintain existing water quality in special groundwater protection areas within federally designated sole source aquifer[s]".

The legislative findings contained in ECL 55-0103 reflect the framers' conclusion that groundwater contamination constitutes a dangerous, potentially irreversible threat to the State's

water supply, requiring timely, preventive steps rather than costly, after-the-fact clean-up measures (ECL 55-0103 [3]). Evidencing this concern are specific legislative findings that "[t]he scientific evidence of groundwater contamination is mounting" (ECL 55-0103 [1]) that "[s]uch contamination, once it occurs, is often irreversible" (ECL 55-0103 [2]) and that "certain groundwater recharge watershed areas are particularly critical for the maintenance of large volumes of high quality groundwater for long periods of time" (ECL 55-0103 [3]). The Legislature's preference for preventive conservation is amplified by a key statutory finding which emphasizes that "[p]revention of the contamination of high quality groundwater and the protection of special groundwater protection areas costs substantially less than measures to mitigate harm following contamination" (ECL 55-0103 [6]).

ECL article 55 not only enunciates a distinct set of priorities and policy concerns with respect to the preservation of natural groundwater sources; it requires that concrete steps be undertaken to implement the objectives it seeks to achieve. To this end, ECL article 55 directs the Long Island Regional Planning Board to prepare a "comprehensive management plan" which, *inter alia,* "shall be designed to ensure the nondegradation of the high quality of groundwater recharged within the special groundwater protection area" (ECL 55-0115). Among other things, the "comprehensive * * * plan" must include an assessment of the "amount and type of human development and activity which the ecosystem can sustain while still maintaining existing ground and surface water quality and protecting unique ecological features" (ECL 55-0115 [5]), the "[d]evelopment of a comprehensive statement of land use management" (ECL 55-0115 [7]), the "[p]roposal of limits on land uses that might have an adverse impact on water quality" (ECL 55-0115 [8]), the designation of certain areas as "suitable and appropriate for public acquisition" (ECL 55-0115 [10]), and the creation of a "program for local governmental implementation of the comprehensive management plan" (ECL 55-0115 [11]).

In 1990, the Legislature further amended the ECL to impose the "most detailed" review requirements in connection with the assessment of environmental impact upon special groundwater protection areas. Specifically, ECL 8-0109 (9) provides that "[a]n environmental impact statement shall be prepared for any action found to have a significant impact on the special groundwater protection area, as defined by 55-0107 of

this chapter". The statute further mandates that "[s]uch statement shall meet the requirements of the most detailed environmental impact statement required by this section or by any such rule or regulation promulgated pursuant to this section" (ECL 8-0109 [9]).[1]

Significantly, the comprehensive waste management plan contemplated by ECL article 55 has not yet been completed. In the interim, however, some 224 development projects have been proposed by various owners of land located in the Central Pine Barrens. Many of these projects have received approvals from the various municipal respondents, while others are awaiting review.

## II.

The appellants, consisting of an incorporated society, the Long Island Pine Barrens Society, Inc., and several individuals dedicated to the protection and preservation of the Central Pine Barrens, commenced the instant hybrid proceeding and action to invalidate the municipal approvals and to enjoin the respondents from taking any further action with regard to the projects until they complied with SEQRA. Specifically, the appellants allege that the municipal respondents violated SEQRA by (1) failing to identify and address the "cumulative" environmental impact of all pending development projects in the Central Pine Barrens, and (2) failing to consider the alternative of acquiring the lands in question with public funds. The various respondents and intervenors moved to dismiss the amended verified petition on a variety of bases, including, *inter alia,* that it failed to state a cause of action. The Supreme Court addressed the sufficiency of the two causes of action alleged, i.e., the appellants' contentions that (1) the respondents were obligated under SEQRA to assess the cumu-

1. The Legislature added to this significant array of special statutory enactments in 1990, by making yet another declaration of urgent need to ensure the hydrogeologic integrity of the Long Island aquifer system—the Long Island Pine Barrens Maritime Reserve Act (ECL art 57 [L 1990, ch 814]). The legislative findings underlying the passage of the Act are unequivocal in their focus upon the need to protect and preserve the fragile Pine Barrens ecosystem as a source of Long Island's drinking water. Declaring that the Pine Barrens system is "of critical importance to the state because it overlies the largest source of pure groundwater in New York", the Legislature found that the Pine Barrens-Peconic Bay ecosystem and its diverse wildlife are "mutually supportive and ultimately dependent upon maintenance of the hydrologic and ecologic integrity of this region" (ECL 57-0105).

lative environmental effects of the various challenged projects, and (2) that the respondents were required to consider the alternative of public acquisition of Pine Barrens lands as part of their SEQRA review, and found that neither stated a cause of action.

In concluding that cumulative impact assessment was not required, the Supreme Court first observed that "[t]he various federal, state, and county statutes * * * emphasize the ecological uniqueness and sensitivity of Zone III, primarily due to its role in preserving Suffolk County's fresh water supply". Although it acknowledged that the Pine Barrens region is an "ecologically unique area with special environmental significance", the court nevertheless concluded that there was no statutory authority requiring the municipal agencies to consider the "cumulative" environmental impact of all 224 proposed development projects before granting approvals for each one of them. Specifically, the court noted that neither the State nor any of its subdivisions had, as yet, enacted a comprehensive plan, policy or statute curtailing or limiting development as a means of ensuring the environmental integrity of Zone III. The court reasoned that, in the absence of such a plan, the municipal respondents were under no obligation to consider cumulative effects in reviewing the environmental impact of development projects under SEQRA.

With respect to the cause of action alleging a duty under SEQRA to consider the alternative of public acquisition, the court found that neither SEQRA nor any of its implementing regulations mentioned, much less required, the respondents to consider such an alternative. More specifically, the court reasoned that 6 NYCRR 617.14 (f) (5), the pertinent regulation governing the review of "alternative" actions, was subject to a "rule of reason", and by its terms, limited the evaluation of alternatives to those which are "feasible, considering the objectives and capabilities of the project sponsor". The court concluded that to require a private developer to include in its environmental impact statement (hereinafter EIS), an evaluation of a "public acquisition" alternative, was contrary to the language of 6 NYCRR 617.14 (f) (5), and violative of the "rule of reason" pursuant to which SEQRA is to be construed.

■ We find that the assertions in the first cause of action of the amended verified petition, alleging that the respondents must consider the cumulative impact of proposed development projects in the Central Pine Barrens, are sufficient to state a cause of action. However, the Supreme Court properly dis-

missed the second cause of action relating to the respondents' alleged obligation to consider the alternative of public acquisition.

## III.

Although the respondents contend that the Court of Appeals has narrowly mandated a cumulative impact assessment only when the challenged development constitutes a component of an "integrated plan" enacted by a municipality, we decline to ascribe such a construction to the recent decisions of the Court of Appeals *(see, e.g., Matter of Village of Westbury v Department of Transp.,* 75 NY2d 62; *Akpan v Koch,* 75 NY2d 561; *Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359).

The Court of Appeals analyzed the concept of cumulative effect in its recent *Save the Pine Bush* holding. In that case, the City of Albany Common Council approved two ordinances to preserve, and also to permit reasonable development in, the so-called "Pine Bush" area within the City of Albany, the "only remaining large pine barrens on inland sand dunes in the United States" *(Matter of Save the Pine Bush v City of Albany, supra,* at 200). The first ordinance amended the City's zoning provisions by creating a new "C-PB" Commercial Pine Bush classification, which allowed, *inter alia,* single-story office buildings approved by the appropriate Site Plan Review Agency. The second ordinance created a "Pine Bush Site Plan Review District", which encompassed approximately 550 acres of underdeveloped Pine Bush land and established a "site plan review process with specific criteria to be used by the Site Plan Review Agency in passing upon applications for certain uses within the district" *(Matter of Save the Pine Bush v City of Albany, supra,* at 201). Pursuant to the foregoing enactments, the Common Council approved the so-called Anderson application, which sought a zoning change in connection with 29.9 acres of underdeveloped land within the Pine Bush area so as to facilitate the construction of a five-building, two-story office complex *(Matter of Save the Pine Bush v City of Albany, supra).* The opponents of the Anderson application argued, *inter alia,* that the Common Council erred in failing to consider the "cumulative" impact of the project in conjunction with the other pending or proposed development projects in the Pine Bush area. The Court of Appeals agreed.

In concluding that a cumulative impact assessment was mandatory in connection with the Anderson application, the Court of Appeals observed that Anderson's application was "related" to the other projects in the Pine Bush area *(Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 206, *supra).* Although Anderson's proposed project and the other projects for which approvals had been sought were neither commonly owned nor structurally or functionally interdependent, the court nevertheless concluded that the various Pine Bush projects were still "related" for the purposes of cumulative impact assessment pursuant to 6 NYCRR 617.11 (b).[2]

Specifically, the court found that the Anderson application was "only a part of a larger plan designed to resolve conflicting specific environmental concerns in a subsection of a municipality with special environmental significance" *(Matter of Save the Pine Bush v City of Albany, supra,* at 206). Noting that " 'SEQRA mandates a rather finely tuned and systematic analysis in every instance' " *(Matter of Save the Pine Bush v City of Albany, supra,* at 206, quoting *Matter of Town of Henrietta v Department of Envtl. Conservation,* 76 AD2d 215, 223), the court held that *"[w]here a governmental body announces a policy* to reach a balance between conflicting environmental goals—here, commercial development and maintenance of ecological integrity * * * assessment of the cumulative impact of other proposed or pending developments is necessarily implicated in the achievement of the desired result" *(Matter of Save the Pine Bush v City of Albany, supra,* at 206 [emphasis added]).

█ The Sole Source Aquifer Protection Law (ECL art 55), only one of several special enactments aimed at preserving the fragile Pine Barrens region, represents the type of comprehensive legislative program which analytically and logically falls within the definition of a "larger plan designed to resolve conflicting specific environmental concerns" *(Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 206, *supra).* In

---

2. 6 NYCRR 617.11 (b) states in full that: "[f]or the purposes of determining whether an action will cause [a significant environmental impact as set forth in 6 NYCRR 617.11 (a)], the lead agency must consider reasonably related long-term, short-term and cumulative effects, including other simultaneous or subsequent actions which are:

"(1) included in any long-range plan of which the action under consideration is a part;

"(2) likely to be undertaken as a result thereof; or

"(3) dependent thereon."

*Save the Pine Bush,* the dispositive factor triggering the duty to assess cumulative impact was the existence of a legislative enactment, the objective of which was to balance commercial and environmental concerns within a specifically delineated geographic area. ECL article 55 not only constitutes a legislative program designed to resolve environmental concerns in a designated locality, its subject matter—preserving dwindling sources of clean groundwater—involves ecological considerations of a scope and dimension overshadowing those involved in the *Save the Pine Bush* case. There is no question that in enacting ECL article 55, the Legislature has identified the Pine Barrens as a discrete, environmentally sensitive groundwater source, prescribing concrete remedial measures which necessarily mandate a comprehensive overview and consideration of the area in its entirety. Under the *Save the Pine Bush* holding, the enunciation of such a definitively framed governmental policy triggers a duty to consider cumulative impact. Indeed, to describe such a specific statutory program as anything less than a concerted, integrated effort to achieve stated environmental objectives is to ignore the plainly stated intent of ECL article 55.

Nor do we concur in the respondents' assertion that the only legislative enactment or "integrated plan" which will suffice to compel cumulative impact review is a municipal ordinance of the type which was before the court in *Save the Pine Bush (supra).* The *Save the Pine Bush* holding contains nothing which can be construed as placing such an inflexible limitation upon the principles it enunciated with respect to cumulative impact review. Indeed, the language employed by the court in framing its holding, and the logic underlying its determination, suggests that precisely the opposite inference should be drawn. Specifically, in summarizing its conclusion, the Court of Appeals unequivocally declared that cumulative impact review is triggered when "a governmental body *announces a policy* to reach a balance between conflicting environmental goals" *(Matter of Save the Pine Bush v City of Albany, supra,* at 206 [emphasis added]). At the very least, ECL article 55 qualifies as the announcement of a "governmental * * * policy". Moreover, the Legislature amended SEQRA in 1990 by adding ECL 8-0109 (9), which mandates the filing of an EIS with respect to any action which significantly affects a special groundwater protection area in conformity with the "most detailed" requirements under SEQRA. A "most detailed" EIS should contain a cumulative effects analy-

sis under the circumstances presented (see, 6 NYCRR 617.11 [b]; 617.14 [f] [3]).

■ Further, cumulative impact review as a means of ensuring that projects are approved in conformity with a legislative program is as logically compelling here—if not more so—than it was in the *Save the Pine Bush* case. In *Save the Pine Bush (supra),* the projects were independent, functionally unrelated actions proposed by different sponsors, whose cumulative effects could nevertheless have resulted in deleterious environmental impact within a well-defined, ecologically sensitive area. In the present case, the various projects—although functionally unrelated—are similarly linked by virtue of their potential to adversely affect an irreplaceable natural resource located within a discrete, geographic area. We decline to construe the many legislative findings and statutes, all of which were clearly intended to foster the careful stewardship and preservation of the Pine Barrens, as something less than a "plan" within the meaning of the applicable authorities.

The dissenters' contentions do not require a contrary result. According to the dissenters, ECL article 55 is principally a collection of legislative policy pronouncements without practical impact or significance prior to the adoption of the comprehensive plan. Although, to be sure, ECL article 55 constitutes a statement of "policy", its scope extends far beyond the mere conceptual formulation of a generalized agenda or set of legislative priorities. Rather, the statute provides for specific strategies and concrete measures calculated to achieve a well-defined objective in connection with discretely delineated geographic areas. ECL article 55 simply cannot be dismissed as a mere enunciation of "policy" for the purposes of determining whether cumulative impact review is necessary.

The cases relied upon by the respondents are factually inapposite and do not require a contrary result (see, e.g., *Matter of Stewart Park & Reserve Coalition v New York State Dept. of Transp.,* 157 AD2d 1, *affd* 77 NY2d 970; *Matter of Village of Westbury v Department of Transp.,* 75 NY2d 62, *supra). Matter of Village of Westbury v Department of Transp. (supra)* held that review of the cumulative impact of a highway interchange and the widening of one of the highways involved was required because those actions were not only part of a common plan, but also functionally interdependent. This case does not stand for the proposition that a cumulative impact assessment need not be performed in other circumstances such as the matter at bar. *Matter of Stewart Park &*

*Reserve Coalition v New York State Dept. of Transp. (supra),* where no cumulative impact analysis was required, involved capital improvements to Stewart Airport in Orange County, and the development of a so-called "buffer" area around the airport. Although the capital program and the buffer area stemmed from the same "common plan", they nevertheless lacked the requisite common impact since—in contrast to the matter at bar—the environmental concerns attendant to each area "[were] quantitatively and qualitatively different" *(Matter of Stewart Park & Reserve Coalition v New York State Dept. of Transp., supra,* at 11). Further, the entire airport development program, including both the airport improvements and the potential impact of development on the "buffer" area, had previously been fully analyzed in a 1977 EIS filed pursuant to the National Environmental Policy Act (42 USC § 4321 *et seq.).*

None of the cases on which the respondents rely establishes that cumulative impact need not be considered at bar, since none involved a legislative program as definitive in its scope, and as significant in its environmental objectives, as that created by ECL article 55.

Requiring the assessment of cumulative impact in the matter at hand does not constitute an attempt to engage in judicial legislation merely because guidelines and standards pursuant to ECL article 55 have not yet been issued. Such a contention presumes that any obligation to consider cumulative impact would be imposed in a regulatory vacuum. At bar, the obligation to assess cumulative impact is derived from regulations which have already been approved and promulgated *(see,* 6 NYCRR 617.11 [b]; 617.14 [f] [3]; *see also,* ECL 8-0109 [2] [b]). The foregoing regulations constitute explicit regulatory authority supporting the respondents' duty to consider cumulative effects in this case. There is no evidence in either the pertinent regulations or in ECL article 55 itself indicating that cumulative impact assessment requirements under SEQRA are to be suspended or preempted pending the adoption of specific guidelines and standards governing groundwater protection areas. Indeed, the recently enacted ECL 8-0109 (9) mandates an assessment of cumulative impact with respect to special groundwater protection areas in conformity with the "most detailed" standards of review and contains no indication that such an assessment must await the issuance of regulations or the completion of the comprehensive plan. We decline to presume that in enacting ECL

article 55, the Legislature necessarily intended to suspend the applicability of existing regulations mandating the assessment of cumulative impact until the ultimate issuance of a comprehensive plan by the Long Island Regional Planning Board.

The dissenters nevertheless contend that the Legislature was presumably aware that the comprehensive plan would require time to complete and that its purported silence with respect to the application of ECL article 55 during this period somehow establishes that cumulative impact analysis pursuant to existing standards must be suspended. To the contrary, in light of the unequivocal legislative concern for the preservation of the Pine Barrens area, the more compelling conclusion is that the Legislature contemplated the vigorous application of preexisting environmental standards to the Pine Barrens region. More fundamentally, to permit development in the Pine Barrens to occur as if ECL article 55 had never been enacted could completely negate the Legislature's statutory scheme before it can ever be implemented and create the risk of irremediable damage to the aquifer which the statute was designed to protect. The Legislature could not have intended such a result.

Even in the absence of the completed comprehensive plan, the statements and directives contained in ECL article 55 and the multiplicity of enactments relating to the Pine Barrens region are more than sufficiently definitive in specificity and scope to provide guidance to the lead agencies in analyzing cumulative impact. In those cases where the Court of Appeals has required cumulative impact analysis, the regulatory schemes which triggered that obligation did not contain specific directives or guidelines establishing precisely how cumulative impact data should be analyzed or acted upon (see, Matter of Village of Westbury v Department of Transp., 75 NY2d 62, supra; Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, supra; Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, supra). A review of the rationale for imposing the duty to consider cumulative impact—existence of a plan or policy to balance competing interests—suggests that the information obtained is to be reviewed in conformity with the general objectives of the plan or policy.

Contrary to the dissenters' contentions, the fact that ECL article 55 requires the framers of the comprehensive plan to consider a program for "local governmental implementation" of the plan (ECL 55-0115 [11]) in no sense establishes that cumulative impact review cannot, or should not, be under-

taken under the present circumstances. The appellants are not attempting to implement a comprehensive management plan, but rather, are merely contending that the respondents erred in omitting a particular avenue of inquiry from their environmental review.

The dissenters also contend that "pragmatic considerations" militate against cumulative impact review, since the Pine Barrens region is vast in size and extends throughout several different municipalities. Our dissenting colleagues urge that imposing a cumulative impact analysis requirement at this juncture would result in an "indefinite moratorium" on development until the comprehensive plan is promulgated, resulting in economic hardship. To the extent that the dissenters' contentions with respect to such "pragmatic considerations" are appropriately considered within the context of the respondents' motions to dismiss, they are vastly overstated. There is no proof in the record that requiring the assessment of cumulative impact will result in dire economic consequences or that such an assessment will necessarily result in a moratorium upon development. While the Pine Barrens region is extensive, the appellants have properly observed that many smaller projects would be eligible for legitimate negative declarations or outright exemptions under SEQRA, and that SEQRA and its enabling regulations contain more than ample provision for limiting the scope of an EIS to relevant and significant areas of inquiry (ECL 8-0109 [2]; 6 NYCRR 617.7, 617.2 [ff]). More fundamentally, the fact that a review process may be logistically complex or broad in scope does not justify a complete abdication of the respondents' obligation to consider cumulative impact under SEQRA, especially where the Legislature has assigned such critical importance to the protection of Long Island's sole source aquifer.

Accordingly, we find that the allegations contained in the appellants' amended verified petition are sufficient to state a cause of action under SEQRA with respect to the respondents' obligation to consider the cumulative impact of the pending and proposed development projects in question.

## IV.

■ We reach a different result, however, with respect to the appellants' second cause of action, which alleges, *inter alia,* that the respondents were obligated to consider the alternative of publicly acquiring the lands comprising the 224 chal-

lenged development projects. Although neither SEQRA nor the regulations which implement it specifically mention the concept of "public acquisition" as a potential alternative action to be considered in an EIS, the appellants nevertheless contend that 6 NYCRR 617.14 (f) (5) mandates the consideration of such an alternative.

SEQRA requires that an environmental impact statement include "alternatives to the proposed action" (ECL 8-0109 [2] [d]; see, 6 NYCRR 617.14 [f] [5]). Agencies are required to "choose alternatives which, consistent with social, economic and other essential considerations, to the maximum extent practicable, minimize or avoid adverse environmental effects" (ECL 8-0109 [1]). As the Court of Appeals has recently observed, "[t]o be meaningful, any choice among alternatives must be based on an awareness of all reasonable options, but the degree of detail required in assessing those alternatives will vary with the circumstances and nature of each proposal" *(Matter of Town of Dryden v Tompkins County Bd. of Representatives,* 78 NY2d 331, 333-334). It is well settled, however, that in approaching such an assessment "[a] rule of reason applies: the agency must consider a reasonable range of alternatives to the specific project" *(Matter of Town of Dryden v Tompkins County Bd. of Representatives, supra,* at 334; *Akpan v Koch,* 75 NY2d 561, *supra; Matter of Har Enters. v Town of Brookhaven,* 74 NY2d 524; *Horn v International Business Machs. Corp.,* 110 AD2d 87, 94-95).

Notably, 6 NYCRR 617.14 (f) (5) requires that an EIS contain, *inter alia,* a description and evaluation of the "reasonable alternatives" to the proposed action in light of the "objectives and capabilities of the project sponsor" (6 NYCRR 617.14 [f] [5]). Such alternatives may include, where appropriate, alternate sites, technology, design, timing, use and *"types of action"* (6 NYCRR 617.14 [f] [5] [vii] [emphasis supplied]; *see also,* ECL 8-0109 [2], [4]). The appellants contend that alternate "types of action" must be construed to include the alternative of public acquisition. We disagree.

A review of the second cause of action relating to the concept of public acquisition reveals that it seeks relief in connection with over 200 separate projects, each necessarily involving different factors and considerations relevant to any lead agency's review of potential alternatives. Neither the amended verified petition nor the materials submitted with it, however, contain sufficient project-specific factual detail to permit a meaningful assessment of what alternative actions

should or should not be considered at this juncture in connection with any one challenged project. The appellants' legal theory rests upon the speculative assumption that each of the respondent municipalities possesses, or has access to, the funds which would permit the consideration of public acquisition as a reasonable alternative action.

Moreover, even if we were to overlook the above deficiencies, we would still conclude that the Supreme Court properly dismissed the second cause of action. Specifically, we are in accord with the Supreme Court's conclusion that to obligate private developers lacking the power of eminent domain to include the option of public acquisition as an alternative to a proposed action would, within the present context, transgress the "rule of reason" and extend the meaning of 6 NYCRR 617.14 (f) (5) beyond its intended application *(see, Horn v International Business Machs. Corp.,* 110 AD2d 87, 95-96, *supra; see also, Matter of Schodack Concerned Citizens v Town Bd.,* 148 AD2d 130, 135). Further, merely because Suffolk County has adopted a policy of acquiring land situated in the Pine Barrens does not, under the circumstances presented, establish that, pursuant to 6 NYCRR 617.14 (f) (5), an environmental impact statement filed by a private developer must consider such an alternative. While ECL 55-0115 (10) directs the Long Island Regional Planning Board to consider, among other things, the public acquisition of suitable sites in framing its comprehensive plan, this provision does not state that a lead agency considering reasonable alternatives under 6 NYCRR 617.14 (f) (5) must consider such an option in conjunction with individual applications pending before it.

In light of the foregoing, the order and judgment of the Supreme Court is modified, on the law, by deleting the provision thereof which granted those branches of the motions of the respondents and the intervenors-respondents which were to dismiss the first cause of action of the amended verified petition for failure to state a cause of action, and substituting therefor a provision denying those branches of the motions, and the first cause of action is reinstated; as so modified, the order and judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith, including determination of those branches of the motions which were left undecided on the ground that they were rendered academic by the dismissal of the amended verified petition.

SULLIVAN, J. (concurring in part and dissenting in part). I disagree with the majority's conclusion that the provisions of ECL article 55 (the Sole Source Aquifer Protection Act) constitute an adequate substitute for a comprehensive management plan for the area commonly known as the Long Island Central Pine Barrens, so as to mandate that the municipal respondents review the cumulative environmental impact of all proposed development projects within that area pursuant to the regulations enacted under ECL article 8 (the New York State Environmental Quality Review Act [hereinafter SEQRA]) before approving any one of them.

### I. BACKGROUND

As accurately noted by the majority, the Central Pine Barrens is a large, undeveloped area situated in the Towns of Brookhaven, Riverhead and Southampton in Suffolk County. The Legislature has designated the Central Pine Barrens to be one of several "special groundwater protection areas" on Long Island (ECL 55-0113 [1] [g]), which means that it is a "recharge watershed area within a designated sole source area * * * which is particularly important for the maintenance of large volumes of high quality groundwater for long periods of time" (ECL 55-0107 [3]). Indeed, the declared public policy of this State is to safeguard such areas "in order to maintain existing water quality" so as to aid in "the protection of the potable supply underlying the entire recharge area" (ECL 55-0101). To this end, the Legislature has designated the Long Island Regional Planning Board as the entity charged with the responsibility of formulating and presenting for approval a comprehensive management plan for the Central Pine Barrens and other designated areas (see, ECL 55-0113 [5]; 55-0115). It is undisputed that such a plan is to include, inter alia, an assessment of the nature and extent of human development which the ecosystem can sustain without compromising existing water quality and unique ecological features, the development of a comprehensive land use management statement, the proposal of limits on potentially adverse land uses, the designation of certain areas as being suitable for public acquisition, and the creation of a program for the local governments to implement the comprehensive management plan (see, ECL 55-0115 [5], [7], [8], [10], [11]). It is also undisputed that at the present time, such a comprehensive management plan has yet to be formulated and approved. Hence, applications to develop parcels within the Central Pine Barrens

continue to be decided by local municipal entities in much the same manner as they were prior to the enactment of this enabling legislation.

The appellants commenced the instant hybrid action and proceeding, *inter alia,* to enjoin any further development activity in the area, including the more than 200 proposed actions encompassed by this litigation. They maintained that, under SEQRA and ECL article 55, no development could be undertaken until such time as the various municipal respondents fully considered the cumulative impact of each and all of the projects, and considered as an alternative to development the public acquisition of each parcel slated for development. In addition to disagreeing with the appellants' interpretation of the applicable statutory and decisional law, the respondents asserted, *inter alia,* that the proceeding is time barred with respect to many of the challenged approvals *(see,* CPLR 217 [1]; *see generally, Matter of Long Is. Pine Barrens Socy. v Planning Bd.,* 78 NY2d 608), and is premature as to other proposed developments which are still awaiting approval. Accordingly, in order to facilitate the disposition of this unwieldy litigation, the parties charted their own course by agreeing that the Supreme Court should first determine the validity of the two causes of action set forth in the petition and then, if necessary, resolve the procedural issues raised with respect to individual development proposals. Employing this procedure, the Supreme Court, Suffolk County, defined the issue raised by the first cause of action in the following terms: "whether SEQRA and 6 NYCRR 617 require the respondent agencies to study the cumulative effects of all pending, proposed, and reasonably foreseeable actions within the geographic area encompassed by Zone III before the agencies can approve any pending action?" Likewise, the parties agreed that the second cause of action would be framed in the following manner: "whether SEQRA and 6 NYCRR 617 require the respondent agencies to consider, as an alternative to each proposed action located in Zone III, public acquisition of the land which is the subject of the proposed action before approving the action?" The Supreme Court answered both questions in the negative. For the reasons which follow, I agree with its determination.

## II. PUBLIC ACQUISITION

I concur in the majority's view that the second cause of

action must be dismissed, inasmuch as the appellants can point to no provision of law which mandates the consideration by the respondent municipalities of public acquisition as an alternative to each proposed development. While 6 NYCRR 617.14 (f) (5) addresses the consideration of alternatives to a proposed action in those cases where the preparation of an environmental impact statement (hereinafter EIS) is necessary, that consideration must be tempered by reason. Indeed, it is well settled that an agency's compliance with SEQRA obligations is governed by a rule of reason *(see, Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417). Hence, it often has been stated that not every conceivable alternative to a proposed action need be set forth in an EIS or be considered by the lead agency *(see, Aldrich v Pattison,* 107 AD2d 258; *Coalition Against Lincoln W. v City of New York,* 94 AD2d 483, *affd* 60 NY2d 805). Moreover, it has been held that private developers and those applicants who do not possess the power of eminent domain are limited in their choice of alternative sites *(see, Horn v International Business Machs. Corp.,* 110 AD2d 87, 95-96; *see also, Matter of Schodack Concerned Citizens v Town Bd.,* 148 AD2d 130, 135). By parity of reasoning, it would defy logic to require that applicants seeking to develop property in the Central Pine Barrens set forth and explore public acquisition of the sites as an alternative, or to direct the municipal respondents herein to undertake such an effort in each case. This is especially true since the Legislature already has designated the Long Island Regional Planning Board as the entity with the duty of identifying specific areas within the region which are suitable and appropriate for public acquisition *(see,* ECL 55-0115 [10]). Similarly, it is noteworthy that the Legislature, which easily could have imposed such a requirement pending formulation by the Long Island Regional Planning Board of a comprehensive management plan, has not seen fit to do so. Accordingly, the second cause of action lacks merit.

### III. CONSIDERATION OF CUMULATIVE IMPACT

Unlike the majority, I find that the appellants' first cause of action also is lacking in merit. As previously noted, the appellants take the position that the respondent municipalities are compelled by law to consider the cumulative environmental impact of *all* pending, proposed and reasonably foreseeable development in the Central Pine Barrens region before approving *any* development. Inasmuch as I find no legisla-

tive or judicial mandate supporting this extreme view, I cannot agree.

## A. RELEVANT STATUTORY AND DECISIONAL LAW

As noted by our Court of Appeals, "[g]enerally speaking, SEQRA charges State and local agencies with the responsibility of implementing the procedures and purposes it sets forth. To that end, they must determine first whether a proposed action may have a 'significant effect' on the environment and, if it does, prepare or cause to be prepared an environmental impact statement in the manner set forth in the statute (ECL 8-0109 [2])" *(Matter of Village of Westbury v Department of Transp.,* 75 NY2d 62, 68).

In considering the appellants' "cumulative effects" claim, it is instructive to note that SEQRA itself contains no provision which specifically addresses the issue of when the cumulative effects of two or more actions must be considered by the agency conducting environmental review. However, pursuant to the authority set forth in ECL 8-0113, the Commissioner of the New York State Department of Environmental Conservation has enacted various regulations which make some reference to the topic of cumulative effects *(see, e.g.,* 6 NYCRR 617.11 [a] [11]; [b]). In describing those criteria which are to be weighed in determining the impact of development, 6 NYCRR 617.11 (a) (11) lists for consideration "two or more related actions undertaken, funded or approved by an agency, none of which has or would have a significant effect on the environment, but when considered cumulatively would meet one or more of the criteria of this section." Moreover, 6 NYCRR 617.11 (b) goes on to describe those situations in which cumulative effects consideration is required, as follows:

"For the purpose of determining whether an action will cause one of the foregoing consequences, *the lead agency must consider reasonably related* long-term, short-term and *cumulative effects, including other simultaneous or subsequent actions which are:*

"(1) *included in any long-range plan of which the action under consideration is a part;*

"(2) *likely to be undertaken as a result thereof; or*

"(3) *dependent thereon"* (emphasis supplied).

There is no suggestion in the record before us that any of the challenged projects involved herein fall into either of the two categories set forth in 6 NYCRR 617.11 (b) (2) and (3).

Indeed, the record is barren of evidence establishing that the diverse and distinct projects are dependent upon each other or bear a cause and effect relationship to one another *(cf., Matter of Village of Westbury v Department of Transp.,* 75 NY2d 62, *supra* [consideration of cumulative impact required where the construction of additional traffic lanes on one roadway is dependent upon, and has no utility independent of, the planned subsequent widening of another roadway]).

However, the appellants contend that cumulative effects review of the hundreds of proposed actions in this case is mandated by the existence of ECL article 55, which they claim is akin to a long-range comprehensive plan for the protection and limited development of the Central Pine Barrens *(see,* 6 NYCRR 617.11 [b] [1]). To be sure, the cumulative effects of multiple actions must be considered in those instances where such a plan exists. Conversely, it is clear that in the absence of such a plan, consideration of cumulative effects, while permitted and often desirable, is not required *(see, e.g., Akpan v Koch,* 75 NY2d 561; *Matter of Orange Envt. v Jorling,* 161 AD2d 1069, 1070; *Matter of Cahn v Planning Bd.,* 157 AD2d 252, 256-257).

Relying upon the decision of the Court of Appeals in *Matter of Save the Pine Bush v City of Albany* (70 NY2d 193), the majority adopts the appellants' view that ECL article 55, insofar as it contains broad statements of policy and commissions the Long Island Regional Planning Board to formulate an environmentally sound plan for the development of the Central Pine Barrens, constitutes an adequate substitute for a long-range comprehensive plan and thereby triggers mandatory consideration of the cumulative effects of the many and varied actions challenged in this case.

However, a review of that decision and of the Sole Source Aquifer Protection Act itself fails to support this assertion. In *Save the Pine Bush (supra),* the City of Albany Common Council approved a new zoning classification which would have permitted limited commercial development in an ecologically unique region known as the Pine Bush, an area wholly situated within the City. The ordinance did not set aside any particular tract of land for development, but generally was " 'intended to define commercial development of the area * * * by insuring that its ecological integrity is maintained' (ordinance Number 7.11.84 § 1)" *(Matter of Save the Pine Bush v City of Albany, supra,* at 201). The Common Council also created a Pine Bush Site Plan Review District and set forth

"specific criteria" *(Matter of Save the Pine Bush v City of Albany, supra,* at 201) to be employed in considering applications for development in the Pine Bush area. Thereafter, upon reviewing an EIS, the Common Council approved an application to change the zoning classification of a certain parcel of land in the Pine Bush so that it could be commercially developed. However, while the EIS provided that adverse environmental effects had been minimized to the maximum extent practicable, it did not analyze the *cumulative* impact which the proposed development and as many as 10 other pending development proposals would have on the Pine Bush. A proceeding subsequently was commenced challenging, *inter alia,* the approval of the proposed action on the ground that consideration of cumulative impact was required under 6 NYCRR 617.11. The Court of Appeals agreed, reasoning that the challenged action was "related" to the proposed projects in the Pine Bush because "[it] is only a *part of a larger plan* designed to resolve conflicting specific environmental concerns * * * [thereby necessitating] assessment of the cumulative impact of other proposed or pending developments" *(Matter of Save the Pine Bush v City of Albany, supra,* at 206 [emphasis supplied]).

The appellants seize upon the reference by the Court of Appeals to the announcement of "a policy to reach a balance between conflicting environmental goals" *(Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 206, *supra)* and argue that the mere existence of such a policy triggers mandatory cumulative impact analysis for all projects located in any area which has been legislatively designated as environmentally sensitive. However, this contention overlooks the crucial fact that an integrated, concrete and specific plan for development existed in *Save the Pine Bush.* Indeed, the Court of Appeals expressly observed that the challenged action was "related" to other proposed projects in that case, not merely because it was situated in the same geographical area as the others, but because it was "part of a larger plan" *(Matter of Save the Pine Bush v City of Albany, supra,* at 206).

In deciding *Save the Pine Bush (supra),* the Court of Appeals relied upon its earlier decision in *Chinese Staff & Workers Assn. v City of New York* (68 NY2d 359). There, the City of New York failed to consider the cumulative impact which seven proposed luxury apartment buildings set forth in the city's *plan* for a Special Manhattan Bridge District would have on the displacement of low-income residents and on the

character of the historic Chinatown district. The Court of Appeals held that cumulative effects consideration was required because the projects were related, "not because of any commonality of ownership of the proposed buildings, but rather *because they were all part of a plan* designed to add to the City's housing stock while preserving the scale and character of the Chinatown community" *(Matter of Save the Pine Bush v City of Albany, supra,* at 206 [emphasis supplied]; *see, Chinese Staff & Workers Assn. v City of New York, supra,* at 367).

As the above cases demonstrate, it is the existence of a long-range comprehensive plan, rather than a mere statement of policy or enabling legislation, which triggers the requirement to consider cumulative effects under 6 NYCRR 617.11 (b) (1). There simply is no such plan in the case before us. As previously described, ECL article 55 is not a "plan", but a combination of statements of policy and enabling legislation which provides *a mechanism for the creation* of a long-range comprehensive plan for the protection of the Central Pine Barrens and other special groundwater areas. Indeed, it contains provisions expressly designating the Long Island Regional Planning Board as the entity responsible for formulating the comprehensive plan for the Central Pine Barrens and for other Long Island regions *(see,* ECL 55-0113 [5]; 55-0115). The creation of such a plan requires that the Board conduct public hearings before submitting the plan for the approval of the Commissioner of the New York State Department of Environmental Conservation *(see,* ECL 55-0117). Significantly, it is only upon the Long Island Regional Planning Board's adoption of detailed boundaries that "the special groundwater protection areas shall be designated as critical environmental areas * * * and an environmental impact statement shall be prepared * * * for any action found to have a significant impact upon such areas" (ECL 55-0117 [6]). Simply put, ECL article 55 does not constitute a long-range comprehensive plan for the management of special groundwater protection areas, but rather establishes the process by which such a plan may be created.[1]

Despite the existence of a broad legislative statement of public policy set forth in ECL article 55, the absence of a

---

1. At oral argument of this appeal, this court was advised that a preliminary draft of such a plan was circulated by the Long Island Regional Planning Board in August 1991 for comment and for further action pursuant to ECL 55-0117.

concrete comprehensive plan in this case refutes the appellants' claim that the various municipal respondents were required to consider the cumulative impact of all pending, proposed, and reasonably foreseeable developments in the Pine Barrens under 6 NYCRR 617.11 before approving any of them. Indeed, the body of decisional law which has followed the decision in *Matter of Save the Pine Bush v City of Albany* (70 NY2d 193, *supra*) bears out this conclusion. Hence, in *Akpan v Koch* (75 NY2d 561, 574, *supra*), a determination by the Board of Estimate of the City of New York to approve a proposed urban renewal project was challenged, *inter alia*, on the ground that the Board failed to consider the cumulative impact which the project "and other, unrelated development projects in the same geographic area" would have on the secondary displacement of local residents. The Court of Appeals, finding that there was no evidence that the challenged project bore an integral relationship to the other projects in the same vicinity, rejected the contention by observing that "[w]hile it was within the agency's discretion to consider the cumulative impact of such unrelated projects, the agency was not required to do so (6 NYCRR 617.15 [a] [1]; *see, Matter of Save the Pine Bush v City of Albany*, 70 NY2d 193, 205)" *(Akpan v Koch, supra,* at 574).

Similarly, *Matter of Orange Envt. v Jorling* (161 AD2d 1069, *supra*) involved a challenge to the renewal of a landfill permit by the Department of Environmental Conservation based on the Department's failure to consider the cumulative impact of a neighboring landfill and a sod farm on an environmentally sensitive aquifer in the area. The Appellate Division, Third Department, held that the Department was not required "to consider the cumulative impact of possible neighboring sources of contamination * * * absent any evidence that these sources related to any *long-range comprehensive development plan* for either [the challenged landfill] or another design likely to be undertaken to resolve environmental problems of concern to the municipality" *(Matter of Orange Envt. v Jorling, supra,* at 1070 [emphasis supplied]).

Likewise, in *Matter of Cahn v Planning Bd.* (157 AD2d 252, 256, *supra*), the approval of two subdivisions without the preparation of a cumulative EIS was upheld even though the subdivisions "[were] geographically contiguous, share[d] a connecting road * * * were planned by the same engineer, employed the same law firm and were simultaneously scrutinized by [the planning board]". In so holding, the court observed

that "[w]e are not necessarily persuaded that these two projects are indeed related actions, for no *long-range area or community-wide plan* appears to be involved and there is no showing that these subdivisions are integrated, dependent upon each other and devoid of independent utility" *(Matter of Cahn v Planning Bd., supra,* at 256-257 [emphasis supplied]).

As in the foregoing cases, the absence of a specific, long-range comprehensive plan in the present controversy is fatal to the "cumulative effects" claim embodied in the appellants' first cause of action *(see,* 6 NYCRR 617.11 [b] [1]). Moreover, consideration of cumulative impact is not required under other regulatory provisions upon which the appellants and the majority rely. For example, 6 NYCRR 617.15 authorizes the use of a programmatic or generic EIS to evaluate the cumulative environmental effects of a number of separate actions proposed for a single geographic area. However, the preparation of a generic EIS to explore cumulative impact is not mandatory under that provision. Indeed, in *Matter of Save the Pine Bush v City of Albany* (70 NY2d 193, 205, *supra),* the Court of Appeals observed that "the regulations provide that the agency *may choose, in its discretion,* not to examine the cumulative impact of separate applications within the same geographic area (6 NYCRR 617.15 [a] [1])" (emphasis supplied). Hence, where, as in this case, the agency is confronted with a number of unrelated proposed actions for a single region, 6 NYCRR 617.15 does not require the consideration of cumulative effects. Likewise, 6 NYCRR 617.14 (f) (3), which states that an EIS shall contain "a statement and evaluation of the environmental impacts of the proposed action, including the reasonably related short- and long-term effects, cumulative effects and other associated environmental effects", does not require the consideration of the cumulative impact of other projects. Rather, the reference to "cumulative effects" in that provision clearly contemplates the consideration of the aggregate environmental effects of the single proposed action only, not the effects of other pending, proposed and reasonably foreseeable actions in the same geographic area. This commonsense interpretation of the provision is supported by the fact that it makes no reference to other actions, while 6 NYCRR 617.11 (b) (1) does mention the consideration of other projects where a comprehensive plan for the region has been prepared.

The lack of an integrated, long-range plan also deprives us of concrete standards and guidelines to review whether the

municipal respondents complied with the announced goals of ECL article 55. The majority implies that the courts may formulate such standards based upon their own interpretation of ECL article 55. However, only the Long Island Regional Planning Board and the Commissioner of the New York State Department of Environmental Conservation are expressly authorized and designated by the Legislature to prepare and approve a long-range comprehensive management plan for the Central Pine Barrens region. It is my belief that embarking upon such an extraordinary course of action is far beyond both the authority and the proper function of the courts.

For the same reasons, I do not agree with the appellants' claim that certain recent amendments to SEQRA require that the municipal respondents conduct a cumulative impact review with respect to each and every proposed action involved in this case. There is no doubt that the new provisions added to ECL 8-0109 evince a legislative intent to safeguard special groundwater protection areas such as that situated in the Central Pine Barrens. Hence, where an EIS is required pursuant to ECL 8-0109, it must set forth the "effects of any proposed action on, and its consistency with, the comprehensive management plan of the special groundwater protection area program, as implemented by the commissioner [of the Department of Environmental Conservation]" (ECL 8-0109 [2] [i]). Moreover, where the lead agency determines that an action proposed for a special groundwater protection area does not require the preparation of an EIS, "the agency shall show how such action would or would not be consistent with the comprehensive management plan of the special groundwater protection program, as implemented by the commissioner" (ECL 8-0109 [4]). Finally, ECL 8-0109 (9), the provision upon which the appellants and the majority place great reliance, provides as follows: "An environmental impact statement shall be prepared for any action found to have a significant impact on the special groundwater protection area, as defined in section 55-0107 of this chapter. *Such statement shall meet the requirements of the most detailed environmental impact statement required by this section or by any such rule or regulation* promulgated pursuant to this section" (emphasis supplied).

While the foregoing provisions do demonstrate a focus on more stringent requirements for proposed actions in areas such as the Central Pine Barrens, they expressly contemplate the existence of a program for such areas implemented by the

Commissioner. Inasmuch as no comprehensive management plan for the Central Pine Barrens has yet been prepared by the Long Island Regional Planning Board or approved by the Commissioner, the appellants' reliance on these provisions is questionable. Moreover, while the appellants urge that these provisions mandate the consideration of cumulative impact for each of the numerous proposed actions in this case, it is significant to note that the instant matter was commenced more than six months prior to the date upon which these provisions became effective. Thus, the appellants' use of these recent amendments in an attempt to vacate approvals issued prior to their effective date violates the SEQRA policy of dealing with environmental considerations at the earliest possible stage of the planning process, and "could have a devastating financial impact when the developer has made a substantial investment and may already be under commitments for financing and other contractual obligations" (Matter of Long Is. Pine Barrens Socy. v Planning Bd., 78 NY2d 608, 615, supra). An interpretation of the amendments to permit such an unjust result should be avoided (see, Milbrandt v Green Refractories Co., 79 NY2d 26). Additionally, while the appellants emphasize the "most detailed" EIS requirement set forth in ECL 8-0109 (9), they blithely assume that this requirement necessarily implicates the consideration of cumulative effects with regard to each and every proposed action in the Central Pine Barrens, a conclusion which is not borne out by the statutory language.

Far more significant, in my estimation, is the fact that there is a dearth of legislation specifically designed to ameliorate the shortcomings which the appellants perceive in the approval process for proposed actions in the Central Pine Barrens. Indeed, in enacting ECL article 55, the Legislature surely anticipated that the formulation and approval of a long-range comprehensive plan for the special groundwater protection areas of Long Island would constitute a lengthy, detailed, and time-consuming exercise. Despite this awareness, and despite the critical importance which the appellants attach to the consideration of cumulative effects, to the present day the Legislature has taken no steps to set a deadline for the completion of the plan [2] or to substantially limit

2. In this regard, it should be noted that in calling for the creation of a comprehensive management plan for the Long Island Pine Barrens Maritime Reserve, the Legislature set a two-year time limit (see, ECL 57-0115).

development in these areas prior to the release and approval of the plan. Most pointedly, the Legislature has not seen fit to specifically require the consideration of cumulative effects in reviewing proposals for development in the Central Pine Barrens region prior to the issuance of such a plan. Inasmuch as such interim measures could have been enacted with relative ease, it can only be presumed from the lack of ameliorative action that the Legislature *intended* that the municipal respondents consider development proposals in much the same manner as they heretofore have employed until such time as a comprehensive plan is approved. In view of the Legislature's failure to include in ECL article 55 any specific additional provision for the interim protection of this area, the majority's insistence upon the mandatory consideration of cumulative effects for each proposed action constitutes nothing less than the unauthorized enactment of broad, sweeping legislation by judicial fiat.

### B. PRACTICAL CONSIDERATIONS

The requirement that a long-range comprehensive plan be formulated and approved in order to trigger mandatory consideration of cumulative effects in the Central Pine Barrens is not the product of mere whim or caprice. Indeed, pragmatic considerations demonstrate that such a plan would not only prove helpful in considering cumulative impact, but is absolutely essential to any reasoned, intelligent and coordinated review of cumulative effects.

Unlike the situation in *Matter of Save the Pine Bush v City of Albany* (70 NY2d 193, *supra),* where the environmentally sensitive area which was the subject of an integrated plan was situated wholly within the boundaries of a single municipality, the Central Pine Barrens is a vast expanse of land which is located in three different towns in Suffolk County. As the municipal respondents note, there currently exists no legal mechanism whereby the planning agency of one town can compel that of another to exchange information regarding proposed actions within the respective municipalities. Indeed, the towns have no jurisdiction to review projects wholly outside their own geographic boundaries, and they lack the legal authority to refer projects to other towns for review or to demand that the details of proposed actions in other towns be made available to them. The Legislature foresaw this very problem in enacting ECL article 55 and requiring the prepara-

tion of a comprehensive plan, and this is undoubtedly the reason that it charged the Long Island Regional Planning Board with the duty of including in the comprehensive plan: "[a] program for local governmental implementation of the comprehensive management plan * * * in a manner that will insure the continued, uniform, consistent protection of this area in accord with the purposes of [ECL article 55]" (ECL 55-0115 [11]). Since the comprehensive plan itself has not yet been issued and approved, there is no blueprint for the coordination of cumulative effects consideration among the municipalities involved herein. Moreover, the Suffolk County Department of Health Services cannot act as a substitute for the towns, for while its geographical jurisdiction is broader than theirs, it lacks their authority to explore all of the relevant aspects of any proposed action.

Neither the appellants nor the majority suggests any satisfactory solution to the foregoing pragmatic difficulties or the other practical problems engendered by requiring the consideration of cumulative impact in the absence of a long-range comprehensive plan. Thus, in my view, the insistence upon cumulative impact analysis in this case imposes an indefinite moratorium on development activity in the Central Pine Barrens region until such time as a long-range plan is approved. The question of whether such a drastic result should obtain falls squarely within the province of the Legislature, and this court should not supplant the authority of that branch of government.

### IV. CONCLUSION

I am in agreement with the appellants and the majority that the maintenance of groundwater quality in the aquifer which lies beneath the Central Pine Barrens is absolutely essential to the health and future of the residents of Long Island. Indeed, the foregoing analysis is not intended to belittle the environmental significance of the area or to downplay its critical importance as a chief source of high-quality potable water. Nevertheless, I cannot join in the position that the significance of the region alone suffices to mandate cumulative effects consideration by the municipal respondents in the absence of some statutory or decisional law to that effect. As made clear above, I find that consideration of cumulative effects is not required by the regulations enacted pursuant to SEQRA until such time as a long-range comprehensive plan

for the protection and limited development of the Central Pine Barrens is approved. Any request for further protective measures in the interim should be addressed to the Legislature rather than the courts.

While the appellants' desire to maintain the quality of the aquifer and their frustration with the delay in the adoption of a comprehensive plan are entirely understandable, their "cumulative effects" claim fails to state a cause of action under the facts before us.[3] It is noteworthy that the record contains no suggestion that the determinations of these municipal entities and of the Suffolk County Department of Health Services actually violate the policy of safeguarding groundwater quality as announced in ECL 55-0101. Indeed, the appellants' counsel admitted during oral argument of this appeal that many of the challenged projects would have minimal impact on the aquifer and most probably would also be approved under a cumulative impact analysis. Therefore, insofar as the present record permits review of the issue, it appears that the municipal respondents have made a genuine effort to protect both the quality of the aquifer and the ecologically valuable features of the Central Pine Barrens. In my view, the appellants are entitled to nothing more under SEQRA and ECL article 55 at the present time. Accordingly, I would find that, under the current state of the law, lead agencies reviewing applications for proposed actions in the Central Pine Barrens region may, but are not required to, consider the cumulative effects of other pending, proposed and reasonably foreseeable projects in that area. Thus, I would affirm the order and judgment appealed from.

EIBER and MILLER, JJ., concur with THOMPSON, J. P.; SULLIVAN, J., concurs in part and dissents in part in a separate opinion in which COPERTINO, J., concurs.

Ordered that the order and judgment of the Supreme Court is modified, on the law, by deleting the provision thereof which granted those branches of the motions of the respondents and the intervenors-respondents which were to dismiss the first cause of action of the amended verified petition for failure to state a cause of action, and substituting therefor a provision denying those branches of the motions, and the first

---

3. The commendable desire to preserve the valuable aquifer does not give the appellants the right to disregard the plain language of a statute or regulation (see, Matter of Long Is. Pine Barrens Socy. v Planning Bd., 78 NY2d 608, supra [abbreviated Statute of Limitations precludes SEQRA challenge to project in Pine Barrens]).

cause of action is reinstated; as so modified, the order and judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith, including determination of those branches of the motions which were left undecided on the ground that they were rendered academic by the dismissal of the amended verified petition.